CARMEN AURORA VALLADARES DE SABATER, Petitioner and Appellee, *v.* PAULA MARINA, known as MARINA LÓPEZ MUÑIZ ET AL., Oppositors and Appellants. CARMEN AURORA VALLADARES DE SABATER, Petitioner and Appellee, *v.* CARLOS RIVERA LAZÚ ET AL., Oppositors and Appellants.

Nos. R-62-109, R-62-111.      Decided October 14, 1963.

*Herminio Concepción de Gracia, Antonio Peña,* and *J. M. Valentín Esteves* for appellants. *José O. Sabater* and *José Sabater* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Section 138 of the Civil Code, as amended by Act No. 86 of June 15, 1953 (Sess. Laws, p. 304), 31 L.P.R.A. § 539, provides that adoptions under the legislation in force until 1953 would be governed by such legislation *and would have all the desired effects thereunder,* without any limitation whatsoever. In order to determine the successory rights of a person adopted in 1925[1] in the estate left upon the death in 1960 of an uterine sister of her adoptive father, we must therefore resort to the provisions of §§ 202 and 203 of the Civil Code of 1902 (Revised Statutes 1902, pp. 821–22).[2] But before discussing the predominant questions involved in these appeals, we will make a brief reference to the facts giving rise to the controversy.

Juana María Rivera, also known as Manuela, died intestate and unmarried in Mayagüez, P.R., on December 31, 1960, without having descendants or ascendants of any kind. The ab intestato having been probated, the inheritance was claimed by (a) Carmen Aurora Valladares de Sabater;

---

[1] In the deed of adoption it was expressly set forth that "by virtue of this adoption he may use with his surname that of the adopter, and enjoy the benefits granted by the existing Civil Code."

[2] They are counterparts of §§ 132 and 133 of the Civil Code, 1930 ed. Act No. 353 of May 13, 1947 (Sess. Laws, p. 680), the consequence of our opinion in *Sosa v. Sosa,* 66 P.R.R. 573 (decided July 26, 1946), repealed § 132 which provided that "Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place," and amended § 133 to read "The person adopted shall enjoy in the family of the adopter the rights and duties and consideration of a legitimate child," eliminating the saving clause of the text in force until that time on "the exception noted in the preceding section."

(b) Marina López Muñoz and her five nephews or nieces surnamed Esteves-López; and (c) the Rivera-Lazú brothers. Carmen Aurora Valladares alleged her condition as adopted daughter of Edardo or Eduardo Valladares Rivera, uterine brother of the deceased; Marina López invoked her relationship of second cousin of the predecessor, as did the Rivera-Lazú brothers;[3] and the Esteves-López brothers claimed a presumptive right of representation as the children of Francisca López Muñoz, a predeceased second cousin. An appendix is attached to this opinion as an illustration of the genealogy of the parties.

The trial court adjudged Carmen Aurora sole and universal heiress of Juana María Rivera, with exclusion of appellants.[4] Appellants' position is that before § 132 of the Civil Code was amended in 1947, the adopted child had hereditary rights only as to the adoptive father, but not as to the latter's relatives, since the succession in line is accorded only for the benefit of the blood relatives.

▆▆▆ It may be observed that, according to the genealogy, Carmen Aurora is a collateral relative in the third degree of the predecessor, since Higinia Rivera is the trunk common to both; the Rivera-Lazú brothers and Paula Marina López Muñoz are collaterals in the fifth degree; and the Esteves-López are in the sixth degree, since the trunk common to all of them is Manuel Rivera. Sections 878, 879 and 881

---

[3] Although in the petition for declaration of heirship filed by Carlos Rivera Lazú it was alleged that he and his brothers were first cousins of Manuela Rivera, the documentary evidence established that their relationship was that of second cousins.

[4] The inference to be drawn from the well-reasoned opinion delivered by the trial court is that the acknowledgment of appellee as sole heiress is, by right of representation of her predeceased father, uterine brother of the predecessor. A great part of appellants' brief is devoted to refuting this position. In fact, any call of the appellee to the inheritance would be in her own right rather than by representation, which always presupposes the concurrence in a succession of heirs of lower degree with heirs of a higher or nearest degree.

of the Civil Code, 1930 ed., 31 L.P.R.A. §§ 2601, 2602 and 2604. Since in the intestate succession the relative nearest in degree excludes the most remote, excepting the right of representation in proper cases, § 884 of the Civil Code, 1930 ed., 31 L.P.R.A. § 2607, *Romero* v. *Ruiz et al.*, 8 P.R.R. 25 (1905), if the theory were to prevail, that adoption creates relationship ties between the adopted and the relatives of the adopter, Carmen Aurora would exclude the other claimants. It is well to clarify that in the light of the principles announced, the Esteves-López brothers cannot be regarded as legitimate heirs of the deceased because they come within a lower degree of relationship—the sixth collateral degree—since the right of representation in the collateral line shall take place only in favor of the children of the brothers or sisters of the deceased who are in the third degree. Section 888 of the Civil Code, 1930 ed., 31 L.P.R.A. § 2622.

Our previous opinions on successory rights of adopted children—*Ex parte Ortiz*, 42 P.R.R. 339 (1931) ; *Bardeguez* v. *Bardeguez*, 48 P.R.R. 692 (1935) ; *Sosa* v. *Sosa*, 64 P.R.R. 732 (1945) ; *Ex parte Lugo*, 64 P.R.R. 826 (1945) ; *Sosa* v. *Sosa*, 66 P.R.R. 573 (1946) ; and *Ginés* v. *Ayala*, 84 P.R.R. 235 (1961)—are not strictly in point since all of them involved (a) successions in which the adopted concurred in the inheritance with the forced or testamentary heirs; and (b) the disposition of the adoptive father himself. As we have pointed out in the preceding statement of facts, in the instant case the adopted does not concur with forced heirs, nor is there involved the estate left upon the death of the adoptive father but of the latter's sister. However, as we shall see, some statements contained in those opinions lay down the proper rule for deciding the present issues.

The applicable law, as we said, are §§ 202 and 203 of the Civil Code of 1902, which read verbatim as follows:

"Section 202.—Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place.

"Section 203.—The person adopted shall enjoy in the family of the adopter the rights and duties and consideration of a legitimate child, with the exception noted in the preceding section."

When the Civil Code of 1902 was adopted, one of the few subject matters in which the Spanish Civil Code was not strictly followed was adoption, especially insofar as it refers to the hereditary rights of adopted children.[5] Thus, §§ 202 and 203 of 1902 (132 and 133 of the Revised Code of 1930) have no counterpart in the Spanish Code, but were incorporated in the institution by copying the first from the final phrase of the first paragraph of § 214 of the Civil Code of Louisiana of 1870, and the second from the third paragraph of that section.[6] It is significant, however, that as to

---

[5] Explaining this situation, we said in *Sosa v. Sosa,* 66 P.R.R. 573, 576 (1946): "The repeal of § 177 [Sp. C.C.] and its substitution by the provisions which give the adopted child the rights of a legitimate child in the family of the adopter, without prejudice to the rights of the forced heirs, constitute a clear expression of the legislative intent to abandon the principle expressed in the Spanish Code, so foreign to the historical concept of adoption, that the adopted child acquires no right to inherit (in the absence of a contract), and to embrace the principle, so typical of adoption, that the adopted child acquires rights in the estate."

The right of the adopted child to inherit depended, under the former § 177 of the Spanish Civil Code—and still depends under § 174 of the existing Code—on the obligation assumed by the adopter to designate him heir. Hence, it was a sort of successory covenant or contractual succession. See Francisco Soto Nieto, *Derechos Sucesorios del Hijo Adoptivo en el Código Civil Español* (Ed. Reus, 1962); Germán Gambón Alix, *La Adopción* 274, 299 (Ed. Bosch, 1960); Manuel de la Cámara, *Los derechos hereditarios del hijo adoptivo en el Código Civil,* XXXV *Revista de Derecho Privado* 89–108 (1951); José Castán, *La Sucesión Ab Intestato del Hijo Adoptivo,* 128 *Revista General de Legislación y Jurisprudencia* 39–60 (1916).

[6] Section 214 of the Civil Code of Louisiana of 1870 (Dart, Louisiana Civil Code Annotated 81 (1932)) in its pertinent part read as follows:

"Any person may adopt another as his child, except those illegitimate children whom the law prohibits him from acknowledging; but such adoption shall not interfere with the right of forced heirs.

the latter our section employs the term family instead of estate appearing in Louisiana. On this particular Muñoz Morales comments:[7]

"We cannot assume that drafters and translators of the Code of 1902 failed to notice the appreciable difference existing between both terms, since while the term estate refers to the material part, namely, the possessions, properties, patrimony, inheritance, etc. . . ., the term 'family' refers to the personal part, namely, the progeny, genealogy or *family relationship* among the individuals."

In the second case of *Sosa*, 66 P.R.R. 573 (1946), we identified § 133 as the source of the hereditary rights of the adopted child, with special emphasis on the text which provides that the adopted person shall enjoy "in the family of the adopter the rights . . . of a legitimate child." We added that *the only limitation to that right* is that contained in the same precept, to the effect that it shall not injure the rights of other *forced heirs* which shall remain as though the adoption had not taken place.

■ In *Bardeguez* v. *Bardeguez*, 48 P.R.R. 692 (1935), in considering whether a child could invoke § 742 of the Civil Code relative to the preterition of heirs *in direct line*, and after stating that *"line* in the civil law means a series or order of persons bound together *by a natural relationship* having its origin in a *community of blood"* (p. 699), we held that the adopted child may not be considered as a forced heir in the direct line "since the connection between the adopted child and his adopting parent is quite different" (p. 700). Eleven years later, in *Sosa* v. *Sosa*, 66 P.R.R. 573, 585 (1946), we signified our disapproval of the language

---

" .        .        .        .        .        .        .        .

"The person adopted shall have all the rights of a legitimate child in the *estate* of the person adopting him except as above stated."

[7] *Reseña Histórica y Anotaciones al Código Civil de Puerto Rico, Libro Primero* (1947), p. 420.

copied and said: "As we have already seen, the adopted child has *all* the hereditary rights of a legitimate child, without prejudice to the preferential right of other forced heirs and to their legal portion. Among the rights of a legitimate child is that of annulling the institution of heirs if he is omitted [citation], since the legitimate child is one of the forced heirs in the direct line." It is unquestionable that one of the rights of the legitimate child in the intestate succession is to exclude in the successory order the heirs of lower degree.

For a better understanding of the untenability of plaintiffs' contention—in Puerto Rico the adoption does not create relationship ties with the family of the adopter—it will suffice to say that if we stretched it to the extreme we would have to hold then that no hereditary right could be recognized to the adopted child in the intestate succession, since the latter is deferred by the preference in a particular *line* of those called to the inheritance. The proposition that we have recognized the existence of relationship, though subject to the right not to prejudice other forced heirs, underlies our decisions recognizing rights to the adopted child in the intestate succession. *Ginés* v. *Ayala, supra.*[8]

Appellants contend further that since § 203 was patterned on § 214 of Louisiana, we must resort to other provisions of the latter legal body in order to determine the content of "the rights and duties and the consideration of a legitimate child" referring to the adopted child. Next they make reference to § 214.2 which reads: "The adopted and his lawful issue do not acquire any right of inheritance to the succession of blood relatives of the adopter," and to its predecessor which in its pertinent part read: "[T]he party

---

[8] Section 174 of the Spanish Civil Code in force, as re-enacted by the Act of April 24, 1958 (Medina y Marañón, *Leyes Civiles de España* 104 (Ed. Reus, 1958)), *expressly* provides that the adoption produces relationship between the adopter, on the one hand, and the adopted and his descendants, on the other hand, but not as to the family of the adopter, with the exception of the provisions on marriage prohibitions.

adopted shall acquire no right of succession to the property of relatives of the party adopting." We believe, however, that this contention, far from favoring, injures appellants' position, since both amendments to the original § 214—of the Civil Code of 1870—on which our §§ 202 and 203 were patterned, are subsequent to 1902,[9] and it may well be that it was deemed necessary that the law expressly contain the prohibition to inherit from the blood relatives of the adopter.

■■■ Considering the purposes of the adoption, the text of § 203 which refers specifically to the concept of family rather than exclusively to that of inheritance in determining the status of the adopted as that of a legitimate child, the trend of our doctrine since *Ex parte Ortiz*, *supra*, and the hermeneutical principle therein announced that adoption statutes should be liberally construed in favor of the adopted child, we hold that in Puerto Rico, even prior to 1947, adoption created relationship ties between the adopted and the relatives of the adopter with the proper juridical consequences in the successoral order. We cannot be oblivious to the fact that the underlying purpose of adoption is to create a permanent relationship clothed with certain juridical consequences. For all purposes, the adopted was considered a legitimate child of the adopter and that is the family status which ought to be recognized to him for all legal purposes.

Since the oppositors-appellants are not forced nor legitimated heirs of the deceased, "the only limitation" which prevents the adopted children from coming within the successoral order does not come into play in this case.

---

[9] West's Louisiana Statutes Annotated, Civil Code, vol. 2, p. 132.

For the evolution of the hereditary right of adopted children in Louisiana, see Bugea, *Adoption in Louisiana—Its Past, Present, Future*, 3 Loyola L. Rev. 1 (1945); 23 Tul. L. Rev. 38 (1948); 19 La. L. Rev. 58 (1958); 33 Tul. L. Rev. 48 (1958); 29 Tul. L. Rev. 136 (1954); and 24 Tul. L. Rev. 419 (1950).

The judgment rendered by the Superior Court, Mayagüez Part, on April 2, 1962 will be affirmed.

APPENDIX

*Genealogical Diagram of the Litigants*